UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

TODD COURSER,

          Plaintiff,

    vs.

KEITH ALLARD, BENJAMIN GRAHAM,
and JOSHUA CLINE,

          Defendants.

Case No. 1:18-CV-874

Hon. Gordon J. Quist

**ORAL ARGUMENT REQUESTED**

_____

**BRIEF IN SUPPORT OF KEITH ALLARD AND BENJAMIN GRAHAM'S
MOTION TO DISMISS**
_____

Defendants Keith Allard and Benjamin Graham file this Motion to Dismiss because none of Plaintiff Todd Courser's claims against them can meet the pleading standards for plausibility as a matter of law, and many are barred by the statute of limitations.[1] Courser's filing of this case is simply the latest in his campaign to try to retaliate against his former legislative aides who he blames for his fall from political power, instead of focusing on his own actions.

The Complaint should be dismissed in its entirety for a variety of reasons, but the primary of those is that many of its claims are barred by applicable statutes of limitations because the alleged, even if plausibly pled, occurred prior to August 6, 2015 (three years before the filing of this Complaint). Even if they were not barred by applicable statutes of limitations, the claims should be dismissed because they fail to meet the pleading standards requiring plausibility and sufficient factual allegations as a matter of law.

## BACKGROUND

As is now well-familiar to the Court, in May 2015, then-State Rep. Courser summoned a legislative aide, Graham, to report to Courser's law office late at night in May 2015, and asked him to send out a ridiculous sham email from an account of a fake name to a distribution list of thousands. Courser's "false flag" email was designed to deceive the public if news of his affair with fellow State Rep. Cindy

---

[1] This is the second Motion to Dismiss that Allard and Graham have submitted to this Court relating to claims by Courser: he filed an initial Complaint (Case No. 1:16-CV-1108) against them and many other defendants, making the same type of claims there as well. He voluntarily dismissed that matter before the Court could render a decision on Allard and Graham's Motion to Dismiss in that case.

Gamrat broke. After Graham refused to participate, and Courser discovered that he and Allard reported his misconduct to House leadership, they were fired. On several other occasions during their employment as legislative staffers for Courser and Gamrat from January 2 until July 6, 2015, the date on which they were terminated, Allard and Graham reported a variety of types of misconduct by Courser and Gamrat to members of the House leadership who had been designated to field employee concerns.

Over the six months that Allard and Graham reported to various officials, it appears that none of these officials ever investigated further. However, Courser now claims in his Complaint, without further specificity or support, that Allard and Graham were in fact working at the behest of, or with, various other people.

Allard and Graham presented their evidence, including an audiotape that Graham made of Courser's conversation with him, to the *Detroit News*. The House convened a Select Committee to hold a hearing and investigate, and the House eventually voted to expel Gamrat. Courser resigned before an expulsion vote was taken as to him. In addition, the State is still pursuing criminal charges against Courser in two different counties, including a Misconduct in Office charge.[2] Those

---

[2] *People v. Courser* is pending in Lapeer County Circuit Court, Case No. 17-13022-FH. Courser filed an interlocutory appeal in *People v. Courser* in Ingham County Circuit Court, Case No. 16-541-FH, to the Michigan Court of Appeals, No. 341817, after the trial court held that Courser was not entitled to legislative governmental immunity nor a similar evidentiary privilege. The Michigan Court of Appeals affirmed the circuit court, and remanded the case for trial. *People v. Courser*, __ N.W.2d __, found at 2018 WL 5275256 (Mich. Ct. App. Oct. 23, 2018). However, Courser filed an application for leave to appeal to the Michigan Supreme Court on November 20, 2018, in Case No. 158729.

State charges are still pending and have yet to make it to trial. Courser has filed this second Complaint alleging Allard and Graham were part of a large conspiracy against him.

Courser filed an exhibit from an expert he claims is qualified to render an opinion that Graham's audiotape was altered or edited.  Allard and Graham dispute that his expert is qualified to render such an opinion, and dispute that either of them altered the tape.

## _Courser admits his conduct at the House Select Committee in sworn, public testimony_

In Courser's sworn testimony before the House Select Committee, which was held in public and televised, Courser admitted that he wrote and sent the "controlled burn" email in an attempt to cover up his own misconduct. (See Ex. A, Select Committee Testimony of Todd Courser.) Contrary to Courser's allegations now, Courser's testimony at the Select Committee hearing suggests that the tape that Graham made of the conversation they had on the night that Courser asked Graham to send the "controlled burn" email was a legitimate, accurate recording. "So I – I get to this spot and I look at it. And quite honestly, when I look at the tape and hear it and heard it in Tim Bowlin's office in its entirety – and I – I listened to the tape. And it sounds like a complete record." (_Id._ at 12.) At no point during his testimony before the House, nor during his lawyer's presentation at the Ingham County preliminary examination, did Courser raise any concerns regarding the validity, integrity, or completeness of the May 19, 2015 recording.

Despite Courser's claim now that the tape of his conversation with Graham

was somehow edited, Courser also admitted at the Select Committee hearing to the basic facts of the allegations. For example, when asked about the email, Courser stated, "I've already said publicly numerous times that I'm the one that concocted it and put it together in some bizarre attempt to try and — to try and deal with the issues out there." (*Id.* at 25.) Further, Courser said,

> I have admitted publicly that I was involved in an inappropriate relationship and the attempted cover-up. … I've no excuse, nor can I explain the ridiculous e-mail and voice recordings, except to say that they were the actions of a desperate person.

(*Id.* at 3.) He also admitted that he misused State resources, and that he engaged in "deceptive, deceitful and dishonest conduct." (*Id.* at 32, 34.)

### *The State Court takes testimony relevant to this case*

The Hon. Hugh B. Clarke, Jr., 54A District Court Judge in Lansing, presided over a preliminary examination hearing in Courser's state criminal case in Ingham County on May 25 and 26, 2016, as well as June 14, 2016, to determine if the State had enough evidence for the state district court to bind Courser over for trial on the felony charges. The State took testimony from Graham regarding his recording of his conversation with Courser on May 19, 2015. Judge Clarke did not explicitly rule on whether Graham obtained the recording of this conversation legally under Michigan law. (See *Courser v. Allard I*, Case No. 1:16-CV-01108, PageID1482-1483.) Neither transcripts of the tape-recording, nor the tape itself, were admitted into evidence at the preliminary examination hearing. (*Id.* at 1483.)

Graham and Allard testified that while they discussed as "colleagues and

friends" (Case 1:16-CV-01108, PageID.1527) the possibility of recording the May 19, 2015 conversation in which Courser ultimately asked Graham to send the "controlled burn" email, Allard did not instruct Graham to record the meeting, and Graham made his own decision to record it. During his testimony, Graham was asked on multiple occasions whether Allard or anyone else ordered, directed, or told him to tape the conversation, and he repeatedly answered "no." (*Id.* at PageID.1489, PageID.1520, PageID1521-22.) During one exchange, Graham was asked,

> Q: And isn't it true that Keith Allard told you to record the conversation.
> A: No.
> Q: If Keith Allard said that he told you to record the conversation, would you dispute that?
> A. Yes.

(*Id.* at PageID.1520.) Allard was similarly consistent in his denial that he instructed Graham to record the conversation. Allard stated that they discussed Graham recording the conversation and that, given the circumstances, Allard thought it was a good idea for Graham's protection, but that he did not direct Graham to do so. (*Id.* at PageID.1527.) Both Allard and Graham testified that they were concerned about Courser's mental state at the time that Courser summoned Graham to his law office late at night, and both knew that Courser kept a loaded gun in his office. (*Id.* at PageID.1523-1524, PageID.1525-26 (Allard); see also *id.* at PageID.1488-1489 (Graham).) Regarding their discussion about recording the meeting, Allard said, "We had a frank discussion, but I did not direct Ben to do that." (*Id.*, PageID.1528.)[3]

---

[3] During the testimony of Graham, he could not recall certain parts of the conversation that he had with Courser where Courser asked Graham to send the

# ARGUMENT

## I.    Standard for Review

Federal Rule of Civil Procedure 12(b)(6) allows for the Court to dismiss claims if the plaintiff fails to state a claim upon which relief can be granted. "[A] motion to dismiss on statute of limitations grounds should be granted when the statement of the claim affirmatively shows that the plaintiff can prove *no* set of facts that would entitle him to relief." *New England Health Care Employees Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003) (internal quotations and citations omitted). Even when claims are not barred by a statute of limitation, the complaint must still "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted).

The factual allegations in the complaint must be sufficient to give notice to the defendant as to the claims alleged, and the plaintiff must plead "sufficient factual matter" to render the legal claim "plausible," i.e., more than merely possible. *Iqbal*, 556 U.S. at 677.  Although the Court must assume the fact allegations as true in analyzing a motion to dismiss, a legal conclusion couched as a fact allegation need not be accepted as true, nor are recitations of the elements of a cause of action sufficient. *Id.* at 678.  The Court may, on a motion to dismiss, consider matters or documents fairly implicated by reference in the Complaint itself.  *Commercial*

---

"controlled burn" email.  (Case 1:16-CV-01108, PageID.1483; see generally PageID.1489-1519.) Although he did not admit the transcripts or tapes into evidence, Judge Clarke permitted the State to show Graham transcripts to refresh his recollection about issues discussed during that conversation.

*Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007).

II.   **Count 1 – Courser's claim under 42 U.S.C. § 1983 must fail because Allard and Graham were not state actors within the statute of limitation and because they could never have been responsible for any alleged constitutional violations.**

Although it is not entirely clear, it appears that Courser's Count 1 makes claim(s), per the vehicle of 42 U.S.C. § 1983, that Allard and Graham acted as state actors to violate Courser's: (1) Due Process rights under the 14th Amendment (Compl. ¶ 118, PageID.16); (2) Equal Protection rights under the 14th Amendment (*id.* at ¶ 119, PageID.17); and (3) Fourth Amendment rights (¶ 121, PageID.17).[4] Even this is unclear, though, since all three are merely mentioned in the Count, without explanation of which fact allegations support an alleged violation of which Constitutional provision.

In any event, Allard and Graham adamantly deny the truth of these allegations and claims. However, assuming the fact allegations were true as we must for purposes of this analysis, there are several reasons that Count 1 fails as a matter of law.

A.   **Count 1 is time-barred.**

First, Courser's injury, assuming he has a cognizable one which was caused by Allard and Graham, occurred when Allard and Graham reported Courser's misdeeds to House leadership – reports which all occurred prior to and on the day of their firing on July 6, 2015. Those reports occurred more than three years prior to

---

[4] Courser's Count 1 also references "Art. I § 17" but this appears to relate to the Michigan Constitution. (Compl. ¶ 20, PageID.17.) Section 1983 does not provide for vindication of alleged violations of state constitutional rights.

the filing of Courser's complaint on August 6, 2018. While Section 1983 is a federal cause of action, the statute of limitation for Section 1983 claims is taken from the law of the state in which the cause of action arose. *Wallace v. Kato*, 549 U.S. 384, 387 (2007). Therefore, the limitations period for Section 1983 claims is three years. See *Marlowe v. Fisher Body*, 489 F.2d 1057, 1065 (6th Cir. 1973). A claim under 42 U.S.C. § 1983 claim must meet two elements: (1) the deprivation of a right secured by the Constitution or laws of the United States and (2) the deprivation caused by a person acting under color of state law. *Tahfs v. Proctor*, 316 F.3d 584, 590 (6th Cir. 2003). The limitations period begins running when the allegedly wrongful act results in damages. *Wallace*, 549 U.S. at 391. "The cause of action accrues even though the full extent of the injury is not then known or predictable." *Id.*

All of the injurious acts which Courser claims caused him damage occurred prior to Allard and Graham's termination. The House fired Allard and Graham on July 6, 2015, more than two months before Courser alleges the House "constructively discharged" him from his position as a representative in the House and over three years prior to Courser's filing of this lawsuit. Accordingly, Count 1 is time-barred.

**B.     Allard and Graham are entitled to legislative and qualified immunity.**

To the extent that Courser is complaining about Constitutional violations which occurred by virtue of the substantive or procedural rights he was afforded during the Select Committee hearing, Courser has pled nothing suggesting that Allard and Graham were directly part of it. Allard and Graham were not even state

employees at that point. Courser only seems to suggest that Allard and Graham's allegedly wrongful investigation of Courser led to the eventual House Select Committee process.

This Court has held that legislative aides have absolute legislative immunity for actions taken to participate in this House Select Committee process. See *Gamrat v. Allard*, 320 F. Supp. 3d 927, 935-36 (W.D. Mich. 2018). Allard and Graham would also have qualified immunity if Courser cannot demonstrate that they "violated a right so clearly established that every reasonable official would have understood that what he was doing violated that right." *Id.* at 936-37.  Under the same facts, this Court has already held that Courser's paramour, Cindy Gamrat, could not get over the qualified immunity hurdle: she had no property interest in her elected position, and she failed to demonstrate that a wrongful ouster from office violated clearly established rights under current law. *Id.* at 937-38. The same applies to Courser's claims in Count 1.  Even worse for Courser's claim, he ultimately resigned from the House rather than face the vote of the chamber, whereas the House actually voted to expel Ms. Gamrat.

### C.   Courser cannot establish causation.

Finally, Courser's sworn testimony at the House Select Committee, which the Court may consider as a fairly-implicated related matter, at least implicitly concedes the general accuracy of Graham's tape recording of their conversation, admits that he sent out an email designed to deceive the public about himself, and admits that he engaged in "deceptive, deceitful and dishonest conduct." (Ex. A at

34.) Even if Allard and Graham used the methods that Courser alleges they did to uncover his wrongful conduct, which Allard and Graham deny, Courser cannot establish causation.

### III.   Count 2 – Courser's 42 U.S.C § 1985 claim fails because Courser cannot allege the necessary motivation for the alleged conspiracy.

To establish a conspiracy under 42 U.S.C. § 1985, Courser must show:

(1)   a conspiracy involving two or more persons,
(2)   for the purpose of depriving, directly or indirectly, a person or class of persons the equal protection of the laws and
(3)   an act in furtherance of that conspiracy
(4)   that causes injury to person or property, or a deprivation of a right or privilege of a United States citizen.

*Collyer v. Darling*, 98 F.3d 211, 233 (6th Cir. 1996). "The plaintiff must also show the conspiracy was motivated by racial, or other class based animus." *Id.* Where a plaintiff does not establish that he is "a member of a discrete and insular minority accorded special protection under the Equal Protection Clause because of inherent personal characteristics" or allege that defendants' actions were "motivated by his membership in any group," plaintiff fails to state a civil conspiracy claim under Section 1985. *Perry v. Abramson*, No. 2:18-CV-148, found at 2018 WL 6264829, *7 (W.D. Mich, Nov. 30, 2018) (Maloney, J.).

Here, Courser has not alleged any facts to establish that he is a member of a protected class because of "inherent personal characteristics." He has likewise not alleged actions by Allard and Graham motivated by Courser's supposed membership in any protected class, like his race. Accordingly, Courser's Count 2 also fails because he cannot allege sufficient facts to establish its plausibility.

10

## IV.   Count 3 – Courser has likewise not stated valid claims under either federal wiretapping or state eavesdropping law.

Courser's Count 3 fails at the outset because the harm Courser alleges he suffered – being surveilled, wiretapped, and eavesdropped upon – occurred during the time of Allard and Graham's employment, according to the Complaint's allegations.  This was prior to August 6, 2015 and is, therefore, outside of the applicable statute of limitations for civil claims in Michigan. With certain specified exceptions, the statute of limitations for civil claims in Michigan is three years. See MCLA 600.5805(2) ("Except as otherwise provided in this section, the period of limitations is 3 years after the time of the death or injury for all actions to recover damages for the death of a person or for injury to a person or property.") Even assuming Courser's claimed facts are true, the alleged surveillance, wiretapping, and eavesdropping all occurred more than three years before Courser filed his lawsuit and Count 3 should, therefore, be dismissed.  The limitations period begins to run from the time the alleged wrong was done, regardless of the time when damage results. *Henry v. Dow Chemical Company*, 905 N.W.2d 601 (Mich. 2018).

Courser also still has not stated valid claims under either federal wiretapping or state eavesdropping law. Courser cited several statutes in his complaint: MCL 750.540, MCL 750.539b, MCL 750.539c, MCL 750.539d, MCL 750.539e, and 18 U.S.C. § 2511. (Compl., PageID.20-21.) None of these statutes, however, gives rise to a civil cause of action. All of the state statutes cited by Courser are criminal statutes with criminal liability. See MCL 750.540, MCL 750.539b, MCL 750.539c, MCL 750.539d, MCL 750.539e. "Violation of MCL § 750.540 does not appear to give

11

rise to civil liability." *Bailey v. Bailey*, No. 07-11672, 2008 WL 324156, at *8, 9 (E.D. Mich. Feb. 6, 2008).

> The language of § 750.540 only addresses criminal sanctions, it does not mention civil penalties. Moreover, the only statute in the chapter that discusses civil liability is MCL § 750.539h, which states '[a]ny parties to any conversation upon which eavesdropping is practiced contrary to this act shall be entitled to the following civil remedies.' … § 750.539h does not serve to supply a civil cause of action for violation of § 750.540. … Here, § 750.540 does not expressly provide for a private cause of action, and does provide for adequate enforcement by creating criminal penalties.

*Id.* The federal statute 18 U.S. § 2511 is likewise a criminal statute with no private cause of action.

Assuming Courser intended to cite a statute that could support a civil claim, the facts that Courser alleges do not support a civil claim under either federal wiretapping or Michigan eavesdropping statutes. There is no violation of Michigan or federal law when the person recording the conversation is also a party to the conversation, as in the recording Graham made of his conversation with Courser as to the "controlled burn" email.  E.g., *Smith v. Cincinnati Post & Times-Star*, 475 F.2d 740, 741 (6th Cir. 1973); *Sullivan v. Gray*, 324 N.W.2d 58, 59-60 (Mich. Ct. App. 1982); *Dearborn Tree Serv., Inc. v. Gray's Outdoorservices, LLC*, No. 13-CV-12584, 2014 WL 6886330, at *7 (E.D. Mich. Dec. 4, 2014).  Here, there is no claim under Michigan or federal statutes as to any recordings that Allard and Graham made of conversations involving Courser were communications to which they were a party.  Under those circumstances, there is no violation of Michigan or federal law. The testimony at Gamrat's preliminary exam was clear, for example, that Mr.

12

Graham himself decided to record certain conversations involving Gamrat at which Mr. Graham was present. There is nothing illegal about that, and Count 3 should therefore be dismissed.

## V.    Count 4 – Courser has likewise not stated a valid claim of libel, slander, or defamation.

"The period of limitations is 1 year for an action charging libel or slander." Mich. Comp. Laws § 600.5805(11). Courser alleged no libelous, slanderous, or defamatory statements by Allard and Graham that supposedly took place on or after August 6, 2017, and Count 4, therefore, is barred by the statute of limitations.

Even Courser's defamation claim was not time-barred, however, Courser has still not stated a valid claim of defamation, because he has not shown either that any statements made by Allard and Graham were false or that they were made with actual malice. In order sustain a claim of defamation, Plaintiff must show:

> (1) a **false** and defamatory statement concerning the plaintiff, (2) an unprivileged communication to a third party, (3) fault amounting to at least negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by publication.

*Thomas M. Cooley Law Sch. v. Doe*, 833 N.W.2d 331, 341 (Mich. Ct. App. 2013) (emphasis added). "[T]ruth is an absolute defense to a defamation claim." *Porter v. Royal Oak*, 542 N.W.2d 905, 909 (Mich. Ct. App.1995).  Additionally,

> "The essentials of a cause of action for [defamation] must be stated in the complaint," including allegations as to **the exact language that the plaintiff contends is defamatory**, the connection of the defamatory words to the plaintiff where such words are not clear or are ambiguous, and the publication of the defamatory words. Inherent in these requirements is that the allegations must set forth where, when, and to whom the alleged statements were published.

13

*Bhan v. Battle Creek Health Sys.*, 579 F. App'x 438, 446 (6th Cir. 2014) (internal citations to Michigan case law omitted) (emphasis added).

In addition to having to prove the alleged statements were false, "[A] plaintiff who is a public official must [also prove that] the false statements were made 'with actual malice.'" *Ghanam v. Does*, 845 N.W.2d 128, 136 (Mich. Ct. App. 2014) (citing *New York Times Co. v. Sullivan*, 376 U.S. 254, 279–280 (1964). The term "malice" in the actual malice standard does not equate to a showing of ill will. Rather, the standard requires a showing that, at minimum, the allegedly defamatory statements were made with a "reckless disregard for the truth." *Smith v. Anonymous Joint Enter.*, 793 N.W.2d 533, 541 (Mich. 2010). Further, "It is well established that the United States Constitution affords a qualified privilege protecting the making of defamatory statements concerning public officials when the statements relate to the official's conduct in office." *Tomkiewicz v. Detroit News, Inc.,* 635 N.W.2d 36, 41 (Mich. Ct. App. 2001).

Here, Courser's defamation claim fails, because he has made no factual allegations that the statements made by Allard and Graham were false. He does not even allege what "exact language [he] contends is defamatory." A summary of allegedly defamatory conduct does not satisfy the requirement that the claim contain the "exact language."

Courser's defamation claim likewise fails because Courser has not offered facts supporting his allegation that any alleged false statements were made with "actual malice." Any statements made by Allard and Graham regarding Courser's

14

conduct were made out of a professional and civic responsibility, and Courser has offered no facts to suggest they had reason to, or that they did, act out of actual malice to him. Courser has not pled sufficient non-conclusory allegations, nor has he offered the requisite evidence of, "actual malice" on the part of Allard and Graham to overcome the Constitutional privilege to complain about an official's conduct in office.

Because Course has not pled sufficient facts to allege that Allard and Graham's statements were false – indeed, he has not pled that they made any specific statements at all – or that they were made out of actual malice and because any claims would be barred by the one-year statute of limitations anyway, Count 4 should be dismissed.

## VI.  Count 5 – Courser has also not stated a valid claim for civil stalking under Mich. Comp. Laws § 600.2954, and it is also time-barred.

As with many of his claims, Courser's Count 5 is also time-barred by the three-year statute of limitations in Michigan. All of the alleged conduct Courser relies on to support his claim of civil stalking occurred prior to August 6, 2015. Based on the statute of limitations alone, therefore, Count 5 should be dismissed.

Even if the claim was not time-barred, however, Courser has still not offered factual allegations to support his claim that Allard and Graham engaged in civil stalking. Section 600.2954 allows for civil action against an individual "who engages in conduct that is prohibited under … sections 750.411h and 750.411i of the Michigan Compiled Laws, for damages incurred by the victim as a result of that conduct." Both Sections 750.411h and 750.411i define "harassment" as,

> [C]onduct directed toward a victim that includes, but is not limited to, repeated or continuing unconsented contact that would cause a reasonable individual to suffer emotional distress and that actually causes the victim to suffer emotional distress. Harassment does not include constitutionally protected activity or conduct that serves a legitimate purpose.

And, both statutes define "stalking" as,

> [A] willful course of conduct involving repeated or continuing harassment of another individual that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested and that actually causes the victim to feel terrorized, frightened, intimidated, threatened, harassed, or molested.

Mich. Comp. Laws § 750.411h; Mich. Comp. Laws § 750.411i.

The Michigan Supreme Court has defined civil stalking is a, "[A] willful course of conduct whereby the victim of repeated or continuous harassment actually is, and a reasonable person would be, caused to feel terrorized, frightened, intimidated, threatened, harassed, or molested." *Nastal v. Henderson & Assocs. Investigations, Inc.*, 471 Mich. 712, 722, 691 N.W.2d 1, 6 (2005). Citing MCL § 750.411h and MCL § 750.411i, the Court in *Natal* explained that, under the harassment statute, "'conduct that serves a legitimate purpose' means conduct that contributes to a valid purpose that would otherwise be within the law irrespective of the criminal stalking statute." *Id.* at 7. Moreover, conduct that is constitutionally protected or serves a legitimate purpose cannot constitute harassment or, derivatively, stalking. *Id.* Further, Sections 750.411h and 750.411i define "unconsented contact" as, "any contact with another individual that is initiated or continued without that individual's consent or in disregard of that individual's

16

expressed desire that the contact be avoided or discontinued." Mich. Comp. Laws § 750.411h.

In this case, the conduct of Allard and Graham is constitutionally protected and served legitimate purposes, given Courser's status as a public official and the secretive conduct in which he was engaged. Allard and Graham had a professional duty and a constitutionally protected right to report their beliefs of wrongdoing to officials in the House. Their conduct, therefore, even if it did rise to the level of stalking or harassment (which it does not), served a constitutionally protected legitimate purpose and hence would not qualify as harassment or stalking under the statute, leaving Courser with no claim for civil stalking.

Further, even if the Court did not find Allard and Graham's conduct had a legitimate purpose, Courser has offered no facts to support his claim that they engaged in the activities required to support a claim of harassment or stalking. Courser offered no facts that support that he felt "terrorized, frightened, intimidated, threatened, harassed, or molested" by Allard and Graham's conduct. Stating that he felt thus is merely a recitations of the elements of a cause of action and hence insufficient to sustain his claim of civil stalking.

Because Count 5 is barred by the statute of limitations and because any conduct by Allard and Graham was constitutionally protected and served a legitimate purpose, and, even if it did not, because Courser has not offered facts alleging that he indeed felt "terrorized, frightened, intimidated, threatened, harassed, or molested" or gave any indication as to what alleged conduct of Allard

17

and Graham's made him feel such, Courser's civil stalking claim should be dismissed.

## VII. Count 6 – Courser's claims for invasion of privacy and intrusion upon seclusion also fails.

Courser has likewise failed to allege facts sufficient to support his invasion of privacy claim. To establish a prima facie case of intrusion upon seclusion, a plaintiff must establish:

> (1) the existence of a secret and private subject matter;
> (2) a right possessed by the plaintiff to keep that subject matter private; and
> (3) the obtaining of information about that subject matter through some method objectionable to a reasonable man.

*Dalley v. Dykema Gossett*, 788 NW2d 679, 687 (Mich. Ct. App. 2010). The "duty to refrain from intrusion into another's private affairs is not absolute in nature, but rather is limited by those rights which arise from social conditions, *including the business relationship of the parties*." *Id*. To prove a claim of invasion of privacy through public disclosure of private facts, a plaintiff must show: "(1) the disclosure of information (2) that is highly offensive to a reasonable person and (3) that is of no legitimate concern to the public." *Doe v Mills,* N.W.2d 824, 828 (1995).

Here, both types of invasion of privacy claims fail. There was no secret and private subject manner, because Courser and Gamrat admitted to their affair. There was no right to keep that subject matter private, even if it had been, because Courser and Gamrat were public officials, and they had no right to keep their public use of resources to hide and perpetuate their affair secret. Finally, any speech by

Allard and Graham regarding Courser and Gamrat's misconduct in office was of legitimate concern to the public.

Additionally, this Court has already ruled on the fact that Allard and Graham's speech as House staffers was constitutionally protected:

> There is no indication that reporting misconduct was "within the scope of [Allard and Graham's] duties," or that Allard and Graham's complaints were "made in furtherance of the ordinary responsibilities of [their] employment." Plaintiffs were not charged with ensuring ethical compliance in their offices—rather, they were legislative staff who observed misconduct by elected officials. Accordingly, the Court concludes that Plaintiffs acted as private citizens when they complained about the conduct of Gamrat and Courser.

*Allard v. Michigan House of Representatives*, 200 F .Supp. 3d 703, 709-710 (W.D. Mich. 2016). This Court in that case also held that Allard and Graham's speech was "a matter of public concern." *Id.* at 710.

Because, even if the facts alleged by Courser were true, he still could not sustain a claim for invasion of privacy, Courser's Count 6 must also be dismissed.

## VIII.   Count 7 – Courser's claim for tortious interference with business relationships should also fail.

Courser has likewise not pled sufficient facts to support his claim that Allard and Graham's alleged conduct amounted to tortious interference with business relationships. In order to establish tortious interference with a business relationship, plaintiff must prove, "the existence of a valid business relationship or expectancy, knowledge of the relationship or expectancy on the part of the defendant, an intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy, and resultant damage to

the plaintiff." *Cedroni Assocs., Inc. v. Tomblinson, Harburn Associates, Architects & Planners Inc.*, 821 N.W.2d 1, 2 (Mich. 2012).

Here, Plaintiff has not stated nor proven the existence of a valid business relationship, nor has he stated what his expectancy was regarding that supposed business relationship. Courser has done no more than make vague claims regarding his supposed clients and conclusory allegations that Allard and Graham supposedly intentionally interfered with those clients' desires to use Courser as an attorney. (Compl., PageID.31.) Even a firm agreement to negotiate a series of additional agreements is not enough for a "business expectancy." See *Saab Auto. AB v. General Motors Co.*, 953 F. Supp. 2d 782, 789 (E.D.Mich. 2013). Having past law office clients does not even qualify as likely future legal work, or an agreement to use Courser's legal services in the future, even if that were enough to demonstrate a "business expectancy."

Courser also fails to offer any facts regarding how that supposed interference was the proximate cause of his damage. (*Id.*) Courser admitted to an extra-marital affair with a fellow House member. He resigned following investigation into his affair and misconduct, which he detailed at a public hearing and admitted under oath. Any damages – which he fails to specify in his complaint – to his law practice resulted from Courser's own conduct and actions.

Because Courser has not stated facts sufficient to support a plausible claim, Count 7 should be dismissed.

**IX.    Count 8 – Courser's claim for intentional infliction of emotional distress also fails.**

To establish a claim for IIED, a plaintiff "must present evidence of (1) the defendant's extreme and outrageous conduct, (2) the defendant's intent or recklessness, (3) causation, and (4) the severe emotional distress of the plaintiff." *Dalley v. Dykema Gossett*, 788 N.W.2d 679, 694 (Mich. Ct. App. 2010).  "[O]nly when a plaintiff can demonstrate that the defendant's conduct is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community will liability attach." *Id.* at 695 (internal quotations omitted). Insults, threats, and annoyances do not give rise to liability for an IIED claim. *Id.*

Here, Courser merely restates the elements necessary for an IIED claim and tries to disguise them as facts, without offering any actual facts to plausibly substantiate those claims. Courser's vague references to "wiretapping" and "surveillance" do not support that alleged conduct was "outrageous" and "utterly intolerable." Courser likewise offers no facts to support his claim that he suffered severe emotional distress – simply saying that he did, knowing it is a necessary element of the claim – does not provide sufficient fact support to sustain the claim.

Finally, since Courser appears to base his IIED claim on acts of wiretapping and surveillance that all allegedly occurred while Allard and Graham were employees of the House (although it is difficult to tell from the Complaint's allegations), the claim would also be barred under a three-year statute of limitations.

Accordingly, because Courser has failed to state a claim for IIED, Count 8 should be dismissed.

## X.   Count 9 – Courser's claims of negligence and negligent infliction of emotional distress likewise must be dismissed.

To establish a prima facie case for negligence, Plaintiff must prove "(1) a duty owed by the defendant to the plaintiff, (2) a breach of that duty, (3) causation, and (4) damages." *Quinto v Woodward Detroit CVS, LLC*, 850 NW2d 642, 644 (Mich. Ct. App. 2014), *appeal denied,* 497 Mich 921 (2014).  "Proximate cause is that which operates to produce particular consequences without the intervention of any independent, unforeseen cause, without which the injuries would not have occurred." *Ross v Glaser*, 559 NW2d 331, 337 (Mich. Ct. App. 1996).

In Paragraph 237 of his Complaint, Courser simultaneously claims Allard and Graham acted negligently or "maliciously, recklessly, intentionally or by reason of gross negligence." (Complaint, PageID.33.) Courser has not alleged sufficient facts to establish what duty Allard and Graham supposedly breached, or how their actions were the proximate causes of Courser's alleged harms. Again, Allard and Graham's speech was protected by the First Amendment and in the public's interest and thus cannot be negligent. Further, Courser's own conduct and his own public admissions are the proximate causes of any of his alleged harms.

Courser's Count 9 should be dismissed because he has not stated sufficient facts to plausibly support his negligence claims.

## XI.   Count 10 – Courser's conspiracy and concert of action also fail.

Courser's claim of conspiracy and concert of actions should also fail, because

there are no factual allegations in his Complaint that suggests Allard and Graham's actions were part of a concerted action, nor that they were done with an unlawful purpose or by unlawful means. To prove civil conspiracy, a plaintiff must show there was, "(1) a concerted action (2) by a combination of two or more persons (3) to accomplish an unlawful purpose (4) or a lawful purpose by unlawful means." *Mays v. Three Rivers Rubber Corp.*, 352 N.W.2d 339, 341 (Mich. Ct. App. 1984).

> [I]t is 'well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim . . . Accordingly, pleading requirements governing civil conspiracies are relatively strict.

*Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008) (internal citations omitted). For there to be a civil conspiracy, there has to be proof of a "separate, actionable tort." *Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 670 N.W.2d 569, 580 (Mich. Ct. App. 2003), aff'd, 693 N.W.2d 358 (Mich. 2005).

More problematic for this Count, Courser has offered no specific factual allegations to support his claim that Allard and Graham were working together, and/or with or for leadership of the House, as part of a "concerted action" against him.  Courser himself acknowledged that he fails to state sufficient facts to support his own claim: "244. Courser is not able to identify all of the activities of Defendants due to the generic similarity of such activities engaged in and promoted by Defendants and/or agent thereof…." (Compl., PageID.34.) And he similarly fails to allege facts that articulate, let alone support, what unlawful purpose Allard and Graham were attempting to accomplish or by what unlawful means they were

23

allegedly using. There can be no civil conspiracy where there is no tort, and, as discussed throughout this brief, Courser has failed to state a viable claim that Allard or Graham committed any torts against him.  Indeed, there is nothing in Courser's Complaint that suggests that he will be able to establish an unlawful purpose for any Allard and Graham's actions, nor that they used any unlawful means.

Because Courser has not alleged facts to show a concerted action, nor any unlawful purpose or unlawful means behind Allard and Graham's actions, Count 10 for civil conspiracy should be dismissed.

## CONCLUSION

Accordingly, Defendants Keith Allard and Benjamin Graham respectfully request that the Court dismiss them completely from this action. Defendants Allard and Graham also ask the Court for all other necessary and appropriate relief.

<div style="margin-left:auto; width:60%">

PINSKY, SMITH, FAYETTE & KENNEDY, LLP
Attorneys for Defendants Keith Allard and
   Benjamin Graham

</div>

Dated: December 7, 2018   By:  /s/ *Sarah R. Howard*

<div style="margin-left:auto; width:60%">

H. Rhett Pinsky
Sarah Riley Howard
146 Monroe Center, NW, Suite 805
Grand Rapids, MI 49503
(616) 451-8496
showard@psfklaw.com

</div>