# EXHIBIT B

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TODD COURSER,

    Plaintiff,

vs.

Case No. 1:18-CV-874

KEITH ALLARD and BENJAMIN GRAHAM,

HON. GORDON J. QUIST

    Defendants.

## AFFIDAVIT OF SPECIAL AGENT DIANE SALTER

S.A. Diane Salter states:

1. I work as a Special Agent for the State of Michigan Department of Attorney General and have been in this role for approximately six years.

2. Prior to my role with the Department of Attorney General, I worked in local law enforcement for approximately 31 years. My law enforcement career included work in the areas of narcotics, investigations, and intelligence. I retired as a Sergeant.

3. On June 19, 2019, I interviewed Joshua Cline as part of an investigation relating to Todd Courser.

4. I understood that Mr. Cline was a defendant in a civil lawsuit Mr. Courser had filed against him and others.

5. Mr. Cline reported to me that, in about November or December 2018, Mr. Cline's church sponsor asked if he was ready to reconcile with Todd Courser. Mr. Cline said he was interested in reconciliation. Mr. Cline agreed to meet with Todd Courser or his attorney, Matthew DePerno, for this purpose. Mr. Cline met with Mr. DePerno on about three different occasions. It wasn't until about March or April 2019 that Mr. Cline met with Todd Courser with the understanding they would work on a religious reconciliation.

6. Mr. Cline stated that, as part of those reconciliation efforts, Mr. Courser asked him to sign an affidavit related to the facts underlying Mr. Courser's case.

7. Mr. Cline reported that he and Mr. Courser exchanged drafts of affidavits and that Mr. Cline was willing to sign something if it was true.

8. Mr. Cline did sign a 15-paragraph affidavit on April 5, 2019, which he sent me a copy of in June 2019.

9. During the months of April, May, and June, however, Mr. Cline reported to me that Mr. Courser continued to pressure him to sign an additional affidavit. They exchanged drafts, including one version that was 16 pages long.

10. Mr. Cline reported to me that on June 9 or 10, 2019, he met with Mr. Courser at his office to review and make changes to a draft affidavit. During that meeting, Mr. Cline stated that he would not sign the current draft of the affidavit because he did not believe that it was all true and/or he did not have personal knowledge to support what it stated.

11. Mr. Cline reported to me that Mr. Courser became insistent and repeatedly told Mr. Cline that he needed to tell the truth and that the affidavit as Mr. Courser wrote it was the truth. Mr. Cline responded that he could not sign the affidavit as it was written.

12. Mr. Cline told me that Mr. Courser said if he signed the affidavit and they "reconciled," Mr. Courser would dismiss him from the lawsuit. If he did not sign, Mr. Courser told Mr. Cline that he intended to default him for not responding to his lawsuit.

13. Mr. Cline indicated to me that he felt pressured to sign an affidavit that was not true. He did not sign the affidavit and instead called his lawyer who contacted the Department of Attorney General.

I declare under penalty of perjury that this statement is correct to the best of my knowledge, information and belief.

Dated: December 16, 2019

_Salter #816_
Diane Salter

3